OPINION of the Court, by
Ch. J. Boyle.
This was an action of covenant upon a deed alleged tobe lost by some misfortune, orto have been taken by fraud out of the plaintiff’s possession by some person unknown.
Upon the issue of non est factum, the plaintiff had a verdict and judgment 5 from which the defendant appealed to this court.
The first objection taken on the part of the appellant questions the propriety of the remedy at law upon a deed lost or destroyed by casualty.
Hie rules which define the rights and obligations of individuals are for the most part founded upon principles of moral justice, which are immutably and universally the same : but those which prescribe the courts in which rights shall be enforced or wrongs redressed, atul the modes of action and of defence, are, and of necessity must be mere creatures of positive law, differing in tit fit rent countries and ages of the world. It is at 3 single view evident that the moral right to demand payment is in no degree affected by the inevitable loss or destruction of the instrument evidencing that right; but it by no means follows that such an event would not operate to change the remedy or the tribunal which is to administer it ; these not depending, like the right to demand payment, upan the immutable principles of inoiui equity. Whether in any, and in what cases a change of remedy is produced by the destruction of the instrument from casualty, will be illustrated by a consi-iici.iuon of the modes of relief and of defence which ihc law affords upon contracts of different species.
For the purpose we have in view, contracts or agree‘ments may be reduced to two classes; 1st. simple contracts, and 2dly. contracts by specialty. The former ■''embraces verbal agreements, and such as are reduced to writing without having the solemnity of a seal. The circumstance of being reduced to writing adds no validity or efficacy to the agreement, exceptas it renders it more certain and facilitates its proof. The writing does not constitute the basis of the action ; it is not necessary to make proferí »f it in declaring, nor is the defendant ett-tiiicd to oyer ; and the plaintiff is bound, except in actions upon mercantile instruments, to aver and prove a *194 consideration. In all such cases the writing' is const* dered as matter of evidence only, not affecting in any manner the farm of action or mode of defence, they being the same whether the agreement be reduced to wri • ting or not ; consequently, the destruction of the writing can produce no change in the remedy or the tribunal which is to administer if, unless it be in cases where a discovery becomes necessary.
The other species of agreement is in many respects widely different. A specially is a contract executed with ¡he solemnities of sealing ami delivery, and is emphatically styled a eked. In contemplation of law it possesses the attributes of dignity and verity in a preeminent degree. Suitably to this high, but factitious character with which the iaw has invested it, peculiar forms of action and solemnities of proceeding are required. None but debt or covenant will lie upon it. It constitutes the basis of the action without reference to the consideration, and the defendant cannot deny the debt or demand, without denying the deed which creates it. In declaring upon it, the plaintiff must make pro-ferí of it, tint the court may see that it is duly executed, and whether it be absolute, conditional or revocable ; and the defendant is entitled to demand oyer, not as a nacre rule of practice, but as a matter of right in law.
The high remedy which the law has given, and the solemn forms of proceeding it has required to be had on a deed, are evidently predicated upon that factitious dignity ivhich in legal contemplation it possesses. Whenever, therefore, any occurrence takes place that destroys that dignity, the law (and surely very consistently with itself) withholds the remedy it gives only on account of the solemnity of the instrument. Thus it is laid down in Gilb. Law of Ev. p. 108, “ that if a man claims a title to a thing lying in agreement, he fails if the seal be torn off from his deed ; for a man cannot shew a title to a thing lying in solemn agreement but by solemn agree ment, and there cáo be no solemn agreement without a, seal.” And again says the same venerable author, “ where a contract creates an obligation, it cannot be pleaded if the seal be torn off; for the seal is the essential part of the deed, and without a seal it is no longer a deed, nor to be pleaded, or given in evidence as a deed. *195 unless in tfee ease of vested interests.” For this doctrine are cited 3 Buls. 79, Rol. Rep. 183, 2 Buls. 246, 2 Rol. Abr. 28, 29, 30. Now it the mere avulsion of the seal destroys the deed and tides from the party claiming under it the remedy which the law has given cut of respect to the dignity of the instrument, how much more forcible is the conclusion from a total destruction, of the deed. Those who admit that the loss of the seal would take away the remedy at law, and Would nevertheless contend that the utter destruction of the deed itself would not have that effect, must argue upon the principle that a part is greater than the whole, and that a less cause is more efficient than a greater. Such an inconsistency cannot be justly imputable to the law, which, however absurd it may be thought fay some to be with respect to some of its premises, will be found, when correctly understood, to be consistent in its conclusions. But further, in Whelpdale’s case, 5 Co. Rep. 119, it was resolved, that where a bond was once the deed of the defendant, but before the action brought it becomes no deed, by breaking off the seal or other alteration or addition, he may safely plead non est factum ; for without question at the time of the plea, which is in the present tense, it was not his deed. Here again we find the doctrine laid down to apply with more force to the destruction of the deed than to the avulsion of the seal or other alteration. In the one case, there is a total annihilation of the deed ; in the other, a mere form (an essential forra however) is taken away, while the substance of the agreement remains. By what kind of metaphysical subtlety and refinement is it that a mere nonentity, a thing which exists in neither form nor substance, is made to operate as a deed r ¥/e know that vested rights will n®t be divested by any occurrence which destroys the validity of the deed ; but with respect to things lying in agreement, these cannot be claimed under a deed which has become invalid, by the destruction of the seal or other alteration, and much more-clearly ought this to be the case when the deed itself-' ceases to have an existence.
Where the plaintiff' avers that the deed is destroyed, non est factum, being in the present tense, forms no is-sise ; it is but a denial of that which is not affirmetij. hai-which in. fact is alleged
*196 This being the only general issue known to the law in an action upon, aadeed, the circumstance that it is inapplicable to the case of a lost deed, shews very strongly the impropriety of the remedy at law.
But again. The necessity of a proferí in an action at law upon the dsed is abundantly proven by the authorities cited in the argument — See Co. Lit. 35 b, 5 Co. Rep. 74, 6 Co. Rep. 456, 3 Atk. 214. Nor will the necessity of proferí be avoided by an averment that the deed is lost or destroyed — See 10 Co. Rep. 92, 2 Atk. 61, and Metcalf vs. Standiford (a), decided in this court fall term 1809. Were this a doubtful point upon the score of English precedents, we would consider ourselves bound, for the sake of consistency and uniformity, by the case of Metcalf vs. Standiford; but the cases cited from English books are in point, and uncontradic-ted by any book of authority in this country.
That the defendant is entitled to oyer as a matter of right, and that it cannot be dispensed with, although the deed is proven to be lost or destroyed, is also clearly shewn by the cases relied upon in the argument — -See 2 Stra. 1186, 1 Mod. 266, 1 Wils. Rep. 16, 1 Tidd’s Prac. 527-8. These forms and solemnities of proceeding are evidently founded upon the continued existence of the deed with all those attributes which give to ⅛ its high factitious character; and that they cannot be dispensed with although the deed be lost or destroyed, conclusively shews that the remedy is thereby lost at law. In such case, however, the party is not without a remedy, a court of equity having an acknowledged and incontestable jurisdiction. A court of equity gives relief not only where a discovery is sought, but where none is wanted. As a court of chancery was established to supply the defects of law, and to give relief where it was denied at law but where justice required it, the jurisdiction of that court in the case of a deed lost or destroyed by casualty very forcibly demonstrates that a court of common law does not afford a remedy in such case.
We are not unapprised that by alat&decision in England the courts of common law there have assumed a concurrent jurisdiction in cases of this kind with the courts of equity : but that decision is not authority here, and appears to us to be sot only unwarranted upon prin- *197 cipie, but to be the most flagrant violation of all the acknowledged forms oi proceeding, and a departure from the best settled authorities, Mor has it met with universal approb itíert in that country. The learned annotator on the Treatise upon Equity, to whom the profession is perhaps more indebted than to any other for luminous views of the sysi< m of equity, has expressed his disapprobation of that dtcisi'-n in terms as strong as was consistent with the respect due to the court who gave it. In remarking upon it he observes, “ that when courts*of common law assume a concurrence of jurisdiction in cases of lost deeds, to a profert of which the defendant would be entitled, they appear to have forgotten that courts of equity, if a bill be framed ior relief as well as discovery, require an affidavit to he annexed to the bill that the deed alleged to be lost is not in the possession or power of the plaintiff. This precaution prevents an obligee in a bond from enforcing the obligation, without risk of being affected by what Bright appear against him were it produced. But in a court of law, if the bond contained a condition or endorsement of payments, and the obligee wished to practice a fraud, he need only allege that such bond is lost, and the obligor would be without remedy, though the deed were actually in the possession of the obligee, unless indeed the obligor went into equity for the production of it.” “ This instance,” adds the enlightened writer, “ is one of those which tends to prove the wisdom of those who, referring to the difference of modes of proceeding in the judicatures ©f law and equity, have anxiously endeavored to keep separate and distinct the objects of their respective jurisdiction” — 1 FonbL 10, 17. We have quoted this passage at large, not only because it shews that the late decision in England is an unwarrantable assumption of jurisdiction by the courts of common law, but because it shews very clearly that the remedy in chancery is better calculated to attain the purposes of justice and prevent the practice of chicanery and fraud. Upon a lull examination of this subject, we are of opinion (judge Clark dissenting) that the remedy in the present case was in equity and not at law./
judgment reversed, &c.

 1 P'